[Civ. No. 3327. First Appellate District, Division One.—June 28, 1920.]

MARY A. FRITZ, Respondent, v. LAURA J. E. MILLS et al., Appellants.

[1] LIENS—PAYMENT OF MORTGAGE UNDER ORDER OF COURT—REVERSAL OF JUDGMENT—SUBROGATION TO LIEN OF MORTGAGE—OWNERSHIP—EVIDENCE.—In this action in which the court, under a supplemental complaint, decreed that plaintiff should be subrogated to the lien of the mortgage which had been paid by the clerk of the court out of funds deposited with him for that purpose pursuant to a judgment and decree of the court in the main case, which latter judgment and decree had been reversed on appeal, the evidence showed that the money which had been deposited with the clerk and paid on the mortgage was the money of plaintiff and not the money of her assignor and attorney.

[2] ID.—STATUS OF PLAINTIFF—LITIGATION TO PROTECT RIGHTS—RETURN OF ORIGINAL INVESTMENT — EQUITY. — The plaintiff having borrowed such money to invest in a perfectly legitimate transaction, which afterward developed into a complicated and seemingly endless subject of litigation, to deny her the amount of money originally invested by her in the transaction because of the part taken by her, upon the advice of counsel, in such litigation in an endeavor to protect her legal rights would be manifestly unjust and contrary to the established principles of equity and justice, particularly in view of the fact that the defendants, who had contributed nothing toward that fund but who would receive the benefit thereof if they were allowed to take the property free and clear of such lien, had received cash and credit sufficient to adequately compensate them for the use of the property during the years they were out of possession.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank J. Murasky, Judge. Affirmed.

The facts are stated in the opinion of the court.

F. H. Dam for Appellants.

Arthur H. Barendt, Chas. J. Heggerty, Chas. W. Reed and Geo. H. Pippy for Respondent.

KNIGHT, J., pro tem.—This is an appeal by the defendants, Laura J. E. Mills and Frederick J. Mills, from a judg-

ment rendered in favor of the plaintiff, Mary A. Fritz, sub-
rogating plaintiff to the rights of a mortgagee and awarding
judgment against the defendants for the amount of the lien,°
with the usual decree of foreclosure and order of sale. This
is the third appeal of this action and a recital of the history
of the litigation seems necessary in order to clearly state,
and afterward to intelligently discuss, the points raised on
this appeal.

The action was commenced on October 31, 1906, by Charles
Wesley Reed, to compel the specific performance by the de-
fendants of a contract for the sale to Reed of certain real
property situate in the city of San Francisco, which, at
the time, was mortgaged to the Mechanics Building & Loan
Association for the sum of $5,000. On October 24, 1907,
the mortgagee commenced foreclosure proceedings. On May
19, 1908, the present plaintiff, Mary A. Fritz, was in the
action at bar, substituted as party plaintiff in the place of
Reed. On May 18, 1908, pursuant to an interlocutory judg-
ment to the effect that it would be equitable for plaintiff
to deposit with the clerk of the court the sum of $6,988.99,
to cover the amount due said defendants under said contract
of sale, including a rental of $35.83 per month from April
9, 1906, from which time plaintiff had occupied the prem-
ises, plaintiff tendered to the clerk that amount, and, on
May 29, 1908, the court entered a finding to that effect.
Thereafter, on June 9, 1908, the court rendered its final
decree in favor of plaintiff, and it was, among other things,
decreed that defendant should, within five days, deposit with
the clerk of said court a deed of said premises to plaintiff,
or, upon their failure to do so, the clerk should execute said
deed and deliver the same to plaintiff, and that upon the
delivery of said deed the clerk should pay said mortgage,
including certain counsel fees and costs, to said Mechanics
Building & Loan Association, and, after making certain
other payments, should pay the remaining money to the
defendants. It was provided, however, that before making
any of said payments said defendants should execute and
deliver to the clerk a satisfaction of the judgment in the
action. The defendants refused to execute said deed and,
on July 14, 1908, the clerk of the court executed a deed
to plaintiff and delivered it to plaintiff's attorney. It was

filed for record the following day. Before the delivery of the same, however, the clerk obtained from plaintiff's attorney a written waiver of that part of the judgment which required defendants to execute a satisfaction of said judgment prior to the disbursement of said money. Thereafter, on August 5, 1908, the court directed the treasurer, to whom the money had been paid by the county clerk, to pay off the amount of said mortgage of said Mechanics Building & Loan Association, amounting to $5,707.17, which was done, and said mortgage was then satisfied of record accordingly. No bond for a stay of execution of the judgment was ever given by defendants, but on December 1, 1908, they took an appeal.

On appeal the judgment was, on December 3, 1909, reversed (*Fritz* v. *Mills*, 12 Cal. App. 113, [106 Pac. 725]), upon the ground that the complaint in the action declared upon a written agreement for the sale of real estate, whereas the findings and judgment were based upon an equitable estoppel *in pais*, which had not been pleaded. The effect of the reversal of the judgment was to nullify plaintiff's deed to the premises.

After the cause was remanded to the superior court the plaintiff filed a third amended complaint and also a supplemental complaint. In the supplemental complaint all of the proceedings taken by the court and the parties after the first trial, relating to the execution of the deed, the payment of the money, and the satisfaction of the mortgage, were set out substantially as they are hereinabove recited. The prayer was that plaintiff be reimbursed for such payments and be subrogated to the rights of the mortgagee, in case plaintiff should not obtain a conveyance of the property, and for such other and further relief as should be just and equitable. On the second trial the judgment was in favor of the defendants. The court denied the prayer of the third amended complaint for specific performance, and in reference to matters pleaded in the supplemental complaint held that the payment of the money into court by plaintiff and the satisfaction of the mortgage were voluntary acts on her part and she was, therefore, entitled to no relief. A motion for a new trial was made by plaintiff and the court denied the motion as to that part of the judgment which

denied specific performance, but granted the motion as to the supplemental complaint, "solely upon the ground that in the opinion of the court the payment of the mortgage by Reed was not a voluntary payment and that plaintiff is entitled to relief on account of such payment." Appeals were then taken by both plaintiff and defendants, and, on June 21, 1915, the supreme court (*Fritz* v. *Mills*, 170 Cal. 449, [150 Pac. 375]), sustained the views of the lower court on the motion for a new trial. In doing so the supreme court declared in unmistakable language that the facts pleaded in the supplemental complaint entitled plaintiff to be subrogated to the rights of the mortgagee, and that she should be granted relief accordingly.

The next trial resulted in a judgment in favor of the plaintiff, in accordance with the views expressed by the supreme court. The plaintiff was subrogated to the rights of the Mechanics Building & Loan Association and was given a decree of foreclosure and order of sale for the amount of her lien.

The decision of the supreme court, speaking through an opinion written by Mr. Justice Shaw, in which all of the justices concurred, is full and comprehensive and, in our opinion, disposes of all of the important questions arising on this appeal.

After a full recital of the facts the decision reads:

"Upon these facts, we are of the opinion that the plaintiff is entitled to relief on account of the payment of said mortgage out of the money deposited in court, if it shall be finally determined that she is not entitled to specific performance. The allegation that the payment was made pursuant to the orders and decree of the court is true, and the finding to the contrary is without support in the evidence. The payment was made in good faith for the purpose of complying with the judgment given by the court and with the agreement which that judgment purported to enforce. The plaintiff cannot justly be made to suffer loss by such compliance and it would be inequitable to allow the defendants to profit by a successful appeal taken after the plaintiff, relying on that judgment, had complied with its terms by paying money on the defendant's debt which the plaintiff was otherwise under no obligation to pay.

"We are also of the opinion that the court has power, under such a supplemental complaint, to declare that the plaintiff shall be subrogated to the lien of the mortgage and to enforce such lien in her favor by an appropriate judgment in the action, in case it should conclude that the plaintiff was not entitled to enforce the alleged agreement of sale. The matters upon which the supplemental complaint were based all took place in the course of the proceedings in the main case and in pursuance of the orders and judgment made by the court. The acts of the plaintiff were both authorized and required by the court itself and when the matter was regularly brought to its notice before final judgment, the court could and should, in justice, give appropriate relief in the action in which the payments were made, in order, so far as it is able to do so, to restore to plaintiff the money she had paid for the defendants in pursuance of its own erroneous judgment. For these reasons, we hold that, so far as the matters presented by the supplemental complaint are concerned, the new trial was properly granted."

And in conclusion the court said:

"For these reasons we think the court below should have limited its order for a new trial to the matters presented by the supplemental complaint and the answer thereto, and that it was correct in denying the new trial so far as the merits of the case of the plaintiff for specific performance is concerned. The order granting a new trial operated to vacate the judgment provisionally, in the event that the order should be sustained on appeal. In the existing circumstances, we think the judgment should stand vacated in order that the court below, upon the going down of the *remittitur*, may proceed to a retrial of the issues arising upon the supplemental complaint and after determining the rights of the plaintiff thereunder may proceed to enter an appropriate judgment for the relief therein claimed, simultaneously with a re-entry of the judgment denying the plaintiff's case for specific performance, that a new trial shall not embrace a retrial of the issues arising upon the third amended complaint, but that the findings already made shall stand as the final decision thereon."

Appellants now contend, however, that during the last trial certain additional evidence was presented which was

not considered by the supreme court at the time it rendered its decision, and it is claimed that such evidence renders the effect of the decision of the supreme court, in so far as it holds that plaintiff was entitled to subrogation, inapplicable to the merits of the present appeal. [1] In this respect it is first claimed that the money deposited with the clerk and paid on the mortgage was Reed's money and not that of Mrs. Fritz. The evidence shows to the contrary. Reed, on May 1, 1908, executed an assignment and transferred all of his interest to Mrs. Fritz, and that assignment was filed in court on May 4, 1908. The interlocutory decree requiring the deposit to be made was rendered and filed on May 16, 1908, and two days afterward, on May 18, 1908, Mrs. Fritz personally borrowed $6,800 from the First National Bank on her promissory note, and delivered the money to Reed, as her attorney, to pay into court, and Reed deposited the money with the clerk of the court accordingly. Afterward Mrs. Fritz personally paid the note at the bank. Whatever Reed may have said about the money being his money was merely his opinion, and is contrary to the established facts. He admitted that Mrs. Fritz had obtained the money in the manner testified to by her, and it was conclusively shown that at the time he made the deposit he had legally transferred all of his interest in the case, and he expressly admitted while testifying that he claimed no interest as a party in the litigation.

[2] It is next contended that plaintiff's case is without equity and that she does not come into court with clean hands. In support of this contention appellants rely principally upon certain acts of plaintiff in relation to two other suits which grew out of this transaction. On September 30, 1908, after Mrs. Fritz had obtained a deed to the property, she entered into an installment contract to sell it to Isabella Laing. During the life of that contract, to wit, on June 30, 1909, plaintiff commenced suit under the McEnerney act to perfect the title. In that suit it was alleged in the verified petition of Mrs. Fritz that she was the owner in fee and in the actual and peaceable possession of the property. Her affidavit contains substantially the same statement, and further states that there were no subsisting mortgages, deeds of trust, or other liens on said property, and that any claim

of Mrs. Mills was without foundation or right. The *remittitur* of the district court of appeal on the first reversal of the action at bar was filed on February 10, 1910, and afterward, on April 30, 1910, Mrs. Fritz, assuming to act as the owner of the property, entered into a further agreement with Mrs. Laing for the sale of the property. The two suits above referred to, in the defense of which the acts of Mrs. Fritz are assailed, were both in ejectment, instituted by Mrs. Mills for the restitution of the premises and for damages for their use and occupation. The first suit was commenced against Reed and Mrs. Fritz on April 8, 1911, subsequent to the date of the first reversal. In the answer in that action Mrs. Fritz alleged that since April 9, 1906, she had been and was then the owner of the premises and entitled to the possession thereof. That action was dismissed on December 2, 1915, for want of prosecution. On December 4, 1915, two days afterward, Mrs. Mills commenced the second action in ejectment against the Laings, to whom Mrs. Fritz had contracted to sell the property. This action was commenced a few months subsequent to the date of the decision of the supreme court. The Laings were represented in that action by an attorney employed by Mrs. Fritz, and Mrs. Fritz financed the defense of the action. Among the defenses urged were those of adverse possession and the statute of limitations. On June 27, 1916, Mrs. Mills recovered a judgment against the Laings for $4,535.70, with interest and costs, for damages on account of the withholding of the possession of said premises from December 4, 1910, to the date of judgment. An appeal was taken by the Laings and the judgment was afterward, on November 26, 1918, affirmed by the district court of appeal of the first appellate district. (*Mills* v. *Laing,* 38 Cal. App. 776, [177 Pac. 493].) Mrs. Fritz financed the appeal and afterward paid the judgment, together with the interest and costs.

The position of Mrs. Fritz throughout the course of the prolonged litigation above mentioned and the matters pleaded by her in the defense of those actions, and the assumption by her of the ownership of the property subsequent to the reversals, together with other acts done and performed by her incidental to the litigation, the importance of which is not sufficient to here discuss, is claimed by appel-

lants to be contrary to equity and good conscience and sufficient to deprive Mrs. Fritz of the right to seek any relief in a court of equity. With this contention we cannot agree. In 1908 Mrs. Fritz borrowed $6,800 to invest in a perfectly legitimate transaction, which afterward developed into ·a complicated and seemingly endless subject of litigation. In the course of that litigation, in order to protect her legal rights, it was necessary for her to present her cause in the manner advised by legal counsel. It was not until November 26, 1918, at the time the district court of appeal affirmed the judgment in *Mills* v. *Laing,* that it was definitely determined that Mrs. Fritz and her successors were not the owners of the property or entitled to the possession thereof, and until that question was definitely decided her attorneys were entitled to make and present any defense which they believed to be consistent with the law. The discussions contained in the opinions of the appellate courts show that while those defenses were not sustained, there was sufficient legal ground for urging them. Mrs. Fritz has been compelled to pay the judgment recovered against the Laings, which, with interest and costs, amounted to upward of $5,000, which compensated the appellants for the use of the premises from December 4, 1910, to December 4, 1915, and there has also been deducted from the judgment in the instant case upward of $5,000, for the use of the premises from April 9, 1906, to December 4, 1910. She has also repaid to the Laings the amount paid by them on the purchase price of the property, and, furthermore, Mrs. Fritz has met the expenses of three trials in the superior court and the cost of two appeals, and now, at the conclusion of twelve years of continuous litigation, she will recover the net sum of $7,443.75. On the other hand, defendants at the commencement of the litigation were the owners of an equity in this property, over the amount of the mortgage interest, of approximately $1,100. During the fourteen years they have been out of the possession of the property they have received cash and credit to adequately compensate them for the use of the property. If plaintiff shall now be denied the amount of money originally invested by her in this transaction, which is represented by the present judgment, and if appellants are allowed to take the property free and

clear of a lien, toward the liquidation of which they contributed nothing, it would be manifestly unjust and contrary to the established principles of equity and justice. We can find no merit in the contention of appellants that the respondent does not come into court with clean hands.

The other points raised by appellants are either immaterial or they have been disposed of by the decision of the supreme court.

The judgment is therefore affirmed.

Waste, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 26, 1920.

All the Justices concurred.